UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ASHLEY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES USA, INC.,<br><br>Defendant. | Case No. 23-cv-01863-LB<br><br>**ORDER GRANTING MOTION TO DISMISS WAGE-AND-HOURS CLAIMS WITH LEAVE TO AMEND**<br><br>Re: ECF No. 5 |

## INTRODUCTION

Plaintiff Ashley Williams, formerly a security guard for defendant Securitas Security Services, sued Securitas for sexual harassment, retaliation, and wage-and-hour violations. Asserting diversity and federal-question jurisdiction, Securitas removed the case to federal court and moved to dismiss the wage-and-hour claims on the grounds that (1) a collective-bargaining agreement (CBA) governs the claims and § 301 of the Labor Management Relations Act (LMRA) thus preempts them, and (2) the plaintiff does not plausibly plead the claims. The court grants the motion on both grounds.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**STATEMENT**

## 1. The Parties and Claims

The plaintiff resides in California and began working in 2018 in San Francisco as a security guard for Securitas, a Delaware corporation with a principal place of business in New Jersey.[1] Her supervisor, Sidney Johnson, sexually harassed her persistently throughout her employment, but when she reported it to HR, Securitas suspended her from her work duties "instead of taking actions to rectify the situation."[2] In December 2021, she was placed on "stress leave and has not been able to return to Securitas. Accordingly, Securitas constructively terminated [her] employment."[3]

Her complaint (filed in state court on March 7, 2023) has four claims related to the harassment, retaliation, and wrongful termination (claims seven through ten) and six wage-and-hours claims relevant to the motion to dismiss (numbered as follows): (1) failure to provide meal breaks in violation of Cal. Lab. Code §§ 226.7 and 512; (2) failure to provide rest breaks in violation of Cal. Lab. Code §§ 226.7 and 512; (3) failure to timely pay wages in violation of Cal. Lab. Code § 204; (4) failure to pay overtime in violation of Cal. Lab. Code § 510; (5) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226; and (6) a violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, predicated on the wage-and-hour violations.[4]

The plaintiff alleges that she regularly worked more than eight hours a day and forty hours a week without overtime compensation, Securitas did not provide her with legally compliant meal-and-rest breaks, and she did not receive accurate itemized wage statements reflecting the regular and overtime hours she worked and the meal-and-rest period premium payments.[5] In claim one,

---

[1] Compl. – ECF No. 1-5 at 4 (¶¶ 1–2), 5 (¶ 7); Notice of Removal – ECF No. 1 at 3 (¶ 11). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and sometimes also to the page numbers at the bottom of documents.

[2] Compl. – ECF No. 1-5 at 5 (¶ 8), 7 (¶ 22).

[3] *Id.* at 7 (¶ 24).

[4] *Id.* at 9–27 (¶¶ 31–120).

[5] *Id.* at 8 (¶¶ 27–28).

the meal-break claim, she adds that Securitas discouraged, impeded, or did not provide her with uninterrupted meal breaks, interrupted her consistently during her meal and rest breaks, and required her to work through her meal periods.[6] Similarly, she was not allowed to take a full ten-minute rest break, was called back to work before ten minutes, or was not allowed to take a break at all.[7] As for pay, the defendant routinely contacted her regarding work-related duties and tasks, all while she was "off her working shift and away from [the d]efendant's place of business."[8] As for overtime, Securitas required her to complete tasks and duties after she clocked out of her shift.[9]

### 2. The CBA

The plaintiff worked as a security guard from September 2018 to December 2021, was a member of a union, and was subject to a CBA that governed her employment. The CBA was effective August 5, 2017 to June 30, 2021 and was renewed on June 30, 2021 and extended through June 30, 2022.[10]

The CBA governs the employer's wage-and-hour policies and definitions. Securitas identifies the following relevant provisions: Article 12 (Wages), Article 13 (Workweek), and Article 25 (Grievance and Arbitration Procedure).[11]

---

[6] *Id.* at 9–10 (¶¶ 34–36).

[7] *Id.* at 10 (¶ 39).

[8] *Id.* at 11 (¶ 45).

[9] *Id.* at 12 (¶ 48).

[10] *Id.* at 5 (¶ 7), 7 (¶ 24); CBA, Ex. 1 to Req. for Jud. Notice – ECF No. 6 at 8–61; Extension Agreement – ECF No. 6 at 4–7. The plaintiff does not dispute that the CBA governs her employment. Opp'n – ECF No. 11 at 8–9 (arguing only that the court's inquiry is confined to the complaint and the CBA is an "outside" document). The court judicially notices it. *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142–43 (N.D. Cal. 2019) ("Courts regularly take judicial notice of a CBA in evaluating a motion to dismiss.") (cleaned up); *Hernandez v. Sysco Corp.*, No. 16-cv-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017) ("A court may take judicial notice of a CBA in evaluating a motion to dismiss."); *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing [CBA] where necessary to resolve issues of [LMRA] preemption.").

[11] Mot. – ECF No. 5 at 10–12; *see* Opp'n – ECF No. 11 at 7 (the provisions seem applicable).

United States District Court
Northern District of California

Article 12 lists minimum hourly wage rates in the geographic areas covered by the CBA.[12] The plaintiff worked in San Francisco. The schedule that applied to San Francisco security officers "provided wages that exceeded 130% of California['s] minimum wage."[13]

Article 13 defines the "normal workweek" (forty hours) and workday (12:00 a.m. to 11:59 p.m.). All time worked in excess of forty hours in a workweek "shall be paid at one and one-half" times the employee's regular rate. All time worked in excess of twelve hours in a workday "shall be paid at two" times the regular rate.[14] All time worked in excess of eight hours per workday in a fifteen-hour period within a workday "shall be paid at one and one-half [] times the employee's regular hourly rate of pay, if and as permitted by law."[15] "Work assignments, whenever possible, shall be made so that an employee will have a sixteen[-]hour rest period within any twenty-four[-]hour work period."[16]

Article 13 also provides for meal periods and rest periods. Employees are entitled to a fifteen-minute rest break for each four hours worked ("or major fraction thereof").[17] Employees are entitled to a duty-free meal period of at least thirty minutes in a five-hour work period (except that when a work period of not more than six hours completes the day's work, the employer and employee may mutually waive the meal period). "Unless an employee is relieved of all duty during a thirty[-]minute meal period, the meal period may be considered an 'on duty' meal period[] and shall be counted as time worked and paid at the employee's regular wage rate. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all

---

[12] CBA, art. 12 – ECF No. 6 at 20–22 (pp. 11–13).

[13] *Id.*, art. 12.1 – ECF No. 6 at 20–21 (pp. 11–12) (setting forth a schedule that increased yearly from 2017 to 2021 and providing that the minimum wage under the section is the greater of the rate in the table or the published San Francisco minimum wage (after any applicable CPI increase)); *id.*, art. 12.5 (providing that a federal, state, county, or city statute or regulation with a higher hourly wage rate supersedes the schedule rate); Mot. – ECF No. 5 at 10 (characterizing the schedule rate as exceeding 130 percent of California's minimum wage). The court accepts Securitas's math, which is unchallenged, because it is verifiable by reference to the California minimum wage for the years in the schedule.

[14] CBA, art. 13.1 – ECF No. 6 at 22 (p. 13).

[15] *Id.*, art. 13.2 – ECF No. 6 at 22 (p. 13).

[16] *Id.*, art. 13.3 – ECF No. 6 at 22–23 (pp. 13–14).

[17] *Id.*, art. 13.6 – ECF No. 6 at 23 (p. 14).

United States District Court
Northern District of California

duty and when an on-the-job paid meal period is agreed to in a written agreement between the Employer and employee. The parties agree that the nature of the work performed by a security officer may prevent him or her from being relieved of all duties[,] necessitating an on-the-job paid meal period."[18] Employees who do not receive meal or rest breaks, or have their rest breaks interrupted without rescheduling, must identify the incidents on their time cards. "[O]therwise, the Employer may assume that the employee received all [] breaks as required by law." Disputes about breaks are resolved under Article 25 (Grievance and Arbitration Procedure).[19]

Article 25 provides the procedures for resolving "all disputes and grievances." "[A] grievance is defined as a difference of opinion between the Employer and the Union regarding only the meaning or application of this Agreement, presented to the Employer in writing within fourteen [] days after it occurred, or when the employee or Union became aware of it, or should have become aware of it."[20]

Submitting a grievance is a four-step process. In step one, within fourteen days of the occurrence (or when the employee or union learn of it), the union submits a signed grievance (with the employee's version of the facts and the section of the CBA that is violated) to the employer's designated representative, who has seven days to "render his or her decision in writing." In step two, if the grievance is not settled or answered during the fourteen days, the union "may submit the grievance" to the employer's "designated Manager or his or her appointed representative" by fax, mail, or email with seven days after receipt of the step-one decision. The manager or representative has seven days to make a decision by fax, mail, or email. "If requested," the manager or representative will meet with the grievant and/or the appropriate union representative within thirty days to review the matter. If this process does not resolve the grievance, the parties may agree to submit the matter to a mediator under the process in step three, but if they do not, the union may proceed to step four, arbitration.[21]

---

[18] *Id.*, art. 13.7 – ECF No. 6 at 23–24 (pp. 14–15).

[19] *Id.*, arts. 13.6–13.7 – ECF No. 6 at 23–24 (pp. 14–15).

[20] *Id.*, art. 25.1 – ECF No. 6 at 43 (p. 34).

[21] *Id.*, art. 25.2 – ECF No. 6 at 43–45 (pp. 34–36).

United States District Court
Northern District of California

The CBA has this provision about the scope of the CBA's grievance and arbitration provisions:

> The Union and the Employer intend that the grievance and arbitration provisions in the [CBA] shall be the exclusive method of resolving all disputes between the Employer and the Union and the employees covered by this Agreement unless otherwise set forth or required under applicable law. The grievance and arbitration provisions shall also cover 'Wage and Hour Claims or Disputes,' which shall include all state and federal statutory claims for alleged unpaid wages, claims relating to uniform maintenance, training time, rest periods, meal periods, recovery periods, overtime pay, vacation pay, expense reimbursement, penalties (including claims brought under Labor Code sections 2698–2699.5 (PAGA)), and all other wage and hour related matters, expressly including claims arising under the Fair Labor Standards Act, California Labor Code Sections 201, 203, 204, 226, 226.7, 227.2, 510–512, 551–558, and 1194, and/or Employer obligations under any applicable California Wage Orders that could have been brought in state or federal court.
>
>    The Parties agree that any employee's . . . Wage and Hour Claims or Disputes shall be first brought to the Employer's attention via the grievance process provided for in this Agreement and that they shall attempt to resolve any such Wage and Hour Claims or Disputes via the grievance procedure provided herein.[22]

### 3. Procedural History

On March 7, 2023, the plaintiff filed the complaint in San Francisco County Superior Court. The defendant removed the case on April 17, 2023, asserting federal-question jurisdiction under the LMRA, 29 U.S.C. § 185, and diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.[23] 28 U.S.C. §§ 1331, 1332(a). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[24] The court held a hearing on June 22, 2023.

## ANALYSIS

Securitas contends that the LMRA preempts the wage-and-hour claims and that in any event, the plaintiff does not plausibly plead those claims. The court grants the motion on both grounds.

---

[22] *Id.*, art. 25.9 – ECF No. 6 at 46–47 (pp. 37–38).

[23] Notice of Removal – ECF No. 1 at 2.

[24] Consents – ECF Nos. 9, 10.

United States District Court
Northern District of California

1

### 1. LMRA Preemption

LMRA § 301 establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). It preempts any state claims based on alleged violations of collective-bargaining agreements between employers and labor organizations. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). The test for preemption is whether resolution of the state claim requires the court to construe a provision of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988); *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116–17 (9th Cir. 2018). If a claim is "founded directly on rights created by collective-bargaining agreements" or is "substantially dependent on analysis of a collective-bargaining agreement," then § 301 preempts it. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (cleaned up). But "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *Dent*, 902 F.3d at 1116 ("The plaintiff's claim is the touchstone of the § 301 analysis.") (cleaned up).

The preemption inquiry thus has two parts. First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Second, if the right underlying the state claim exists independently of the CBA, then the court considers whether the right is "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 1059 (cleaned up).

Securitas contends — in this sequence — that the overtime, meal-break, and rest-break claims are preempted and that the plaintiff did not exhaust the CBA's grievance process.[25] The court adds

---

[25] Mot. – ECF No. 5 at 15–18 (raising issues in this sequence).

a discussion of minimum-wage and pay-period-timing claims to the overtime analysis (due to how the current complaint pleads those claims).

### 1.1 Overtime

The plaintiff alleges a failure to pay overtime wages (claim four) in violation of Cal. Lab. Code § 510. As set forth in the Statement, the claim is predicated on generic allegations of overtime work and a more specific allegation of off-the-clock work by Securitas's contacting the plaintiff about work matters when she was clocked out and not at work. Section 510 does not apply to an employee covered by a valid CBA "if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. The CBA satisfies that standard, as the Statement recounts. This is a case about the rules for security guards, who do not have a normal work day. At least with regard to whether the CBA sets forth the overtime rules, it does, and thus it falls within § 514.

So, for example, in *Curtis v. Irwin Indus.*, a putative class action, the named plaintiff contended that he had a nonnegotiable statutory right to overtime pay for his time on an offshore drilling platform (off the coast of California) during his off-duty shifts. 913 F.3d 1146, 1149–50 (9th Cir. 2019). The district court dismissed the claims as preempted under § 301 of the LMRA. The Ninth Circuit affirmed. *Id.* The Ninth Circuit held that when a CBA satisfies the statutory exemption to overtime, Cal. Lab. Code § 514, the CBA creates the right to overtime pay and the independent statutory right no longer exists. *Id*. at 1154–55. The court rejected the plaintiff's argument that the CBA had to provide overtime pay equivalent to that in Cal. Lab. Code § 510, finding such a conclusion would render the exemption for qualified CBAs superfluous. *Id*. at 1155. Thus, if a CBA satisfies § 514's statutory exemption, § 510's overtime requirements do not apply, and the CBA conveys the only right to overtime. *Id*.; *see also Parker v. Cherne Contracting Corp.*, No. 18-cv-01912-HSG, 2019 WL 359989, at *3 (N.D. Cal. Jan. 29, 2019) (applying *Curtis* and dismissing overtime claims brought under Cal. Lab. Code § 510 on the grounds the CBA defined "overtime

United States District Court
Northern District of California

1    hours worked"); *Chatman v. WeDriveU, Inc.*, No. 3:22-cv-04849-WHO, 2022 WL 15654244, at

2    *5–7, *9 (N.D. Cal. Oct. 28, 2022) (discussing and applying *Curtis*).

3        That analysis controls here, at least to the extent that the plaintiff argues that she is entitled to an

4    overtime scheme that is different than that in the CBA. The CBA governs the right to overtime.

5        The plaintiff nonetheless contends that the CBA does not meet the statutory exemption

6    because it does not "explicitly express and/or deal with the issue whether [the d]efendant is

7    properly compensating its employees their minimum wage."[26] Citing *Johnson v. S.F. Health Care*

8    *& Rehab Inc.*, the plaintiff asserts that because the CBA failed to provide "a minimum hourly

9    wage compliant with § 514," the § 514 requirements were not met and the overtime claim is not

10   preempted. No. 22-cv-01982-JSC, 2022 WL 2789809, at *4 (N.D. Cal. July 15, 2022). In

11   *Johnson*, the plaintiff sued her former employer for failure to pay overtime wages, provide meal

12   breaks and rest periods, and provide accurate itemized wage statements (among other wage-and-

13   hour claims). *Id.* at *1. The CBA — like the CBA here — provided for wages, hours of work, and

14   working conditions, and it had a premium wage rate for all overtime hours worked and a regular

15   hourly rate of pay. But — unlike the CBA here — it did not provide for a regular hourly rate of

16   pay for employees of not less than thirty percent more than the state's minimum wage, as § 514

17   requires, and thus there was no preemption. *Id.* at *4–5 (citing Cal. Lab. Code § 514). The

18   *Johnson* defendant contended that a savings clause in the CBA kept the CBA within § 514, but the

19   court construed the clause as merely requiring the employer to pay the minimum wage. *Id.*

20       This case is not like *Johnson*: the plaintiff does not dispute Securitas's characterization of the

21   CBA as requiring the payment of a base wage of not less than thirty percent more than the state's

22   minimum wage.

23       But that does not necessarily end the inquiry. As discussed in the next section, the plaintiff's

24   allegations are too conclusory to plausibly plead a claim. But there is a suggestion in the complaint

25   that the plaintiff was not paid at all for some work, resulting in a failure to pay the minimum

26

27

----

28   [26] Opp'n – ECF No. 11 at 13.

wage.[27] Addressing that dispute under state law would not require interpreting the CBA: it is a straightforward task of determining the hours worked and calculating whether the plaintiff was paid minimum wage for those hours.

To succeed on a claim under state law for a failure to pay minimum wages, the plaintiff must prove that (1) she performed work and (2) she was paid less than the minimum wage. She also must prove (3) the unpaid wages. Cal. Lab. Code §§ 1194(a), 1197; Judicial Council of California Civil Jury Instructions (2022), CACI No. 2701. State law defines "hours worked" as "the time during which an employee is subject to the control of an employer." Cal. Code Regs. tit. 8, § 11160(2)(J). The state minimum wage dictates the result for the remaining two elements. There is no need to apply the CBA to resolve the claims because the court can look only to state law. The minimum-wage claim thus is not preempted. *Jimenez v. Young's Mkt. Co.*, No. 21-CV-02410-EMC, 2021 WL 5999082, at *8–9 (N.D. Cal. Dec. 20, 2021) ("[I]rrespective of how 'the wages,' or 'hours of work,' are determined under a CBA, [the] plaintiff is entitled to be paid a minimum wage . . . for all hours he was under the 'control' of [the] defendant."); *McGhee v. Tesoro Ref. & Mktg. Co.*, 440 F. Supp. 3d 1062, 1068–70 (N.D. Cal. 2020) (minimum-wage claim not preempted because "whether [the defendants] violated or complied with the CBAs has no import [for] whether they also violated . . . California law"); *Parker*, 2019 WL 359989, at *5–6 ("the minimum wage claims arising under California Labor Code section 1194 are not substantially dependent on analysis of the CBA" and "[c]ourts have routinely held that California wage and hour claims . . . based on a failure to compensate at all for certain hours allegedly worked" are not preempted); *Tolentino v. Gillig, LLC*, No. 20-CV-07427-MMC, 2021 WL 121193, at *4 (N.D. Cal. Jan. 13, 2021) (minimum-wage claim not preempted where the plaintiff "allege[d] [that] there were hours he worked for which he received no credit, i.e., no payment at all").

State law also governs what work is compensable, and that analysis does not depend on interpretation of the CBA. And even if in some sense the CBA governs the employment relationship, the LMRA will not displace state law where state law concurrently and

---

[27] Compl. – ECF No. 1-5 at 11 (¶ 45).

comprehensively governs those aspects of the employment relationship that are the subject of the plaintiff's claims. *See, e.g.*, *Cramer*, 255 F.3d at 690–91. In other words, "[e]ven [though] dispute resolution pursuant to [the CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, . . . the state-law claim can be resolved without interpreting the agreement itself." *Id.* at 690. But at this stage, the plaintiff's allegations are too conclusory to plausibly plead a claim (as discussed below).

The court also notes that claim three, which includes the minimum-wage allegation, is nominally for violation of Cal. Lab. Code § 204, which (as the complaint puts it) requires that wages be paid "in a timely fashion."[28] Securitas describes this claim as "sparse on the facts" and says "it appears [the p]laintiff is seeking waiting time penalties based on her claims for unpaid overtime wages."[29] Securitas characterizes the claim as derivative and contends that it fails because the other claims fail.[30] In her opposition, the plaintiff mentions her § 204 claim (for "timely wages") only in passing.[31]

Section 204 "provides baseline rules for the timing of semimonthly payments under the Labor Code." *Johnson*, 2022 WL 2789809, at *7. But "§ 204(c) states that 'when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees.'" *Id.* at *8 (quoting Cal. Lab. Code § 204(c)). Also, violations of § 204 "can support a [Private Attorneys General Act] claim" but "cannot provide an independent cause of action to plaintiffs in their individual capacities." *Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2019 WL 12536594, at *18–19 (C.D. Cal. June 28, 2019); *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1134 (N.D. Cal. 2016).

---

[28] *Id.* (¶¶ 42–46).

[29] Mot. – ECF No. 5 at 11–12.

[30] *Id.* at 18, 23.

[31] Opp'n – ECF No. 11 at 10–11.

United States District Court
Northern District of California

1    Although the parties did not directly address the issue, for now the court dismisses the claim as

2    preempted because the CBA "establish[es] a slightly different pay arrangement from the terms in

3    Section 204(a)."[32] *Johnson*, 2022 WL 2789809, at *8. "Thus, § 204(c) applies." *Id.*

4    **1.2 Meal Breaks**

5    Securitas contends that the CBA preempts the mealtime claim under Cal. Lab. Code § 512(e).[33]

6    The plaintiff did not respond to the argument specifically: she alleged generally that her claims are

7    founded on non-negotiable state-law rights and then addressed only the overtime claim.[34] In any

8    event, the plaintiff's right to meal breaks (claim one) is conferred by the CBA because the CBA

9    satisfies the statutory exemption to meal periods under Cal. Lab. Code § 512(e).

10    The requirements for meal periods are set forth in Labor Code § 512(a) and (b). But those

11    requirements do not apply to an employee covered under a valid CBA that satisfies § 512(e)'s

12    requirement that the CBA

> expressly provides for the wages, hours of work, and working conditions of
> employees, and expressly provides for meal periods for those employees, final
> and binding arbitration of disputes concerning application of its meal period
> provisions, premium wage rates for all overtime hours worked, and a regular
> hourly rate of pay of not less than 30 percent more than the state minimum
> wage rate.

17    Cal. Lab. Code § 512(e).

18    The CBA satisfies § 512(e)'s statutory requirements, and § 301 thus preempts the claim.

19    *Parker*, 2019 WL 359989, at *5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098–1100 (N.D.

20    Cal. 2014). To the extent the plaintiff asserts that she has an independent right under state law to a

21    meal break, she is wrong. *Parker*, 2019 WL 359989, at *5 (when a plaintiff's meal period claims

22    are exempted under Cal. Lab. Code § 512, the plaintiff "has asserted no rights that exist

23    independently of the CBA, and these claims are preempted"); *Coria*, 63 F. Supp. 3d at 1098 (if

---

[32] CBA, art. 21.1 – ECF No. 6 at 37 (p. 28).

[33] Mot. – ECF No. 5 at 17.

[34] Opp'n – ECF No. 11 at 9–13. Securitas thus responded only to the overtime arguments. Reply – ECF No. 13 at 4–6.

§ 512(e) applies, then § 512(a) does not apply, and the plaintiff's claimed right to meal periods cannot be said to be based on state law and instead "exists solely as a result of the CBA").

### 1.3 Rest Breaks

Securitas contends that the CBA preempts the rest-break claim (for violation of Cal. Lab. Code §§ 226.7 and 512) because the CBA waives the right to sue.[35] As with the meal-break claim, the plaintiff did not respond to the argument specifically: she alleged generally that her claims are founded on non-negotiable state-law rights and then addressed only the overtime claim.[36] In any event, as set forth in the Statement, the CBA provides for rest breaks and a mandatory dispute procedure (Article 25's Grievance and Arbitration) for resolving meal- and rest-break disputes, and it specifically lists §§ 226.7 and 512.[37] *Johnson*, 2022 WL 2789809, at *5 n.4 ("The existence of a grievance procedure in the . . . CBA does not lead to federal preemption unless the litigation waiver is 'clear and unmistakable' and directly references the relevant statutes at issue."). The plaintiff apparently concedes the issue.

The parties did not address — and the court thus does not either — the effect of Industrial Welfare Commission Order 4-2001 (IWC Wage Order 4). Cal. Code Regs. tit. 8, § 11040; *Bradford v. Pro. Tech. Sec. Servs. Inc.*, No. 20-cv-02242-WHO, 2020 WL 2747767, at *6–7 (N.D. Cal. May 27, 2020) (discussing the wage order in the context of a rest-break claim); *see Zayerz v. Kiewit Infrastructure W.*, No. 16-CV-6405-PSG, 2018 WL 582318, at *4 (C.D. Cal. Jan. 18, 2018) (discussing Industrial Welfare Commission Order 16-2001, Cal. Code Regs. tit. 8, § 11160, an order governing rest breaks for employees in the construction industry, in the context of a CBA argument regarding a rest-break claim).

---

[35] Mot. – ECF No. 5 at 17–18 (citing CBA, art. 13.6 – ECF No. 6 at 23 (p. 14)).

[36] Opp'n – ECF No. 11 at 9–13. Securitas thus responded only to the overtime arguments. Reply – ECF No. 13 at 4–6.

[37] CBA, arts. 13.6–13.7, 25.9 – ECF No. 6 at 23–24 (pp. 14–15), 46 (p. 37) (referencing §§ 226.7 and 512).

1    **1.4 Accurate Wage Statements**

2    The derivative claims for failure to provide accurate statements and a violation of the UCL

3    (claims five and six) are preempted because they depend on the preempted claims. For example, the

4    predicate minimum-wage and overtime claims (claims three and four) determine the wages that the

5    plaintiff is due at separation and the resulting accuracy of the wage statements. *Curtis*, 913 F.3d at

6    1150 n.3. The UCL claim similarly stands or falls on the predicate claims. *Berryman v. Merit Prop.*

7    *Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007) ("A violation of another law is a predicate for stating a

8    cause of action under the UCL's unlawful prong.") (cleaned up). The LMRA preempts derivative

9    claims that are substantially dependent on analysis of the CBA. *Jimenez*, 2021 WL 5999082, at *13

10   (claims that are derivative of claims that are preempted are themselves preempted).

11   **1.5 Grievance and Arbitration Provision**

12   The defendant contends that because § 301 preemption applies, the wage-and-hours claims

13   either (1) are completely preempted (and thus should be dismissed) or (2) must be converted into

14   § 301 claims that must be exhausted under the CBA's grievance process.[38] The plaintiff did not

15   address the exhaustion argument except to say in her factual background that Article 25 "lists the

16   procedural requirements and steps for grievance and arbitration procedure[s]."[39]

17   Normally, statutory claims are not subject to arbitration.[40] But a CBA bars a plaintiff's

18   statutory claims if the agreement's waiver of her right to sue is "clear and unmistakable." *Wright*

19   *v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998); *Munoz v. Atl. Express of L.A., Inc.*, No.

20   CV 12–6074–GHK (FMOx), 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012) (quoting *Wright*,

21   525 U.S. at 80–81).

22   As set forth in the Statement and the rest-break section, the CBA provides for a mandatory

23   dispute procedure (Article 25's Grievance and Arbitration Procedure) for resolving meal- and rest-

24   break disputes: under Articles 13.6 and 13.7, employees must identify missed breaks on their time

25

26   _____

27   [38] Mot. – ECF No. 5 at 18–19.

     [39] Opp'n – ECF No. 11 at 7.

28   [40] Mot. – ECF No. 5 at 17 (recognizing this point).

cards and then resolve their disputes under Article 25.[41] Again as discussed above, the plaintiff apparently concedes the issue, at least as to the meal- and rest-break claims, because she raised only overtime arguments.

The analysis is different for wage claims: unlike Article 13's requirements for meal- and rest-break claims, Article 12 does not have a similar provision. That means the issue turns on Article 25.9 (quoted fully in the Statement), which states that "the grievance and arbitration provisions in the [CBA] shall be the exclusive method of resolving all disputes between the Employer and the Union and the employees covered by this Agreement unless otherwise set forth or required under applicable law. The grievance and arbitration provisions shall also cover 'Wage and Hour Claims or Disputes,' which shall include all state . . . statutory claims for alleged unpaid wages, . . . rest periods, meal periods, . . . overtime pay, . . . expressly including claims arising under . . . California Labor Code Sections," including the predicate statutes for the plaintiff's claims. It then states that the parties agree that wage-and-hour claims and disputes "shall first be brought to the Employer's attention via the grievance process provided for in the Agreement and that they shall attempt to resolve any such Wage and Hour Claims or Disputes via the grievance procedure provided herein."[42]

Securitas did not make the waiver argument as explicitly in its motion as it did in its reply. In its Statement of Facts, it said that "Securitas and the Union agreed that any employee's wage-and-hours claim must first be brought to Securitas'[s] attention via the grievance process."[43] It then said that the plaintiff "notably omit[ted] from her pleading any allegation that she exhausted the grievance procedures."[44] It argued explicitly that the CBA waived the rest-period claim because Article 13.6 calls for final and binding arbitration of disputes concerning rest periods.[45] It then said, "[i]ndeed, 'rest periods' is an expressly listed item within the scope of the grievance and

---

[41] CBA, arts. 13.6–13.7 – ECF No. 6 at 23–24 (pp. 14–15).

[42] CBA, art. 25.9 – ECF No. 6 at 46–47 (pp. 37–38).

[43] Mot. – ECF No. 5 at 12 (citing CBA, art. 25.9 – ECF No. 6 at 46–47 (pp. 37–38)).

[44] Id.

[45] Id. at 17 (citing CBA, art. 13.6 – ECF No. 6 at 23 (p. 14)).

arbitration provision."[46] It thus argued a failure to exhaust because the plaintiff (1) did not cause the union to file a grievance or (2) allege that the union breached its duty of fair representation by failing to do so. To support its argument, it cited and quoted *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985–86 (9th Cir. 2007): for a claim preempted under § 301, prior to bringing suit against an employer, "an employee seeking to vindicate personal rights under a [CBA] must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement."[47] As discussed above, the plaintiff did not respond to these arguments. In its reply, Securitas was more explicit, arguing that Article 25.9 "operates as an unmistakable waiver of [the p]laintiff's right to pursue wage-and-hour claims in a judicial forum."[48]

Securitas cited *Sanchez v. Securitas Sec. Servs. USA, Inc.*, No. 2:17-cv-08462-SVW-E, 2018 WL 5861258, at *1–4 (C.D. Cal. July 17, 2018), to support its argument that Article 25.9 bars the claims here.[49] The *Sanchez* provision is different than Article 25.9: it did not have the second paragraph about bringing wage-and-hour disputes to the employer's attention and "trying" to resolve them. (Also, the four-step process has a lot of "mays.") This seems relevant, particularly because the CBA treats wage and overtime claims differently than it treats meal- and rest-break claims, as the earlier analysis of Articles 12 and 13 shows. Securitas did not discuss the effect of that paragraph and whether, considered as a whole, Article 25.9 precludes the plaintiff from seeking judicial relief. But because the plaintiff did not address an issue that was raised more explicitly in Securitas's reply brief, the court does not reach the issue on this round of briefing.

## 2.  Failure to State a Claim

Securitas also contends that the plaintiff did not sufficiently plead facts that entitle her to relief.[50] The court dismisses the claims on this ground too.

---

[46] *Id.* (citing CBA, art. 25.9 – ECF No. 6 at 46–47 (pp. 37–38)).

[47] *Id.* at 19 (cleaned up) (citing and quoting *Soremekun*, 509 F.3d at 985–86).

[48] Reply – ECF No. 13 at 7.

[49] *Id.*

[50] Mot. – ECF 5 at 19–23.

**2.1 Standard of Review**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

In *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014), the Ninth Circuit set forth the standard for pleading wage-and-hour claims post-*Twombly* and *Iqbal*. The plaintiff there alleged that his employer violated the minimum-wage and overtime requirements of the federal Fair Labor Standards Act (FLSA). *Id.* at 639–40. Specifically, the complaint alleged:

> The named plaintiff was entitled to a minimum wage and an overtime hourly wage of time and one-half his regular hourly wage for all hours worked in excess of forty hours per week, the named plaintiff worked more than 40 hours per week for the defendants, and the defendants willfully failed to make said overtime and/or minimum wage payments.

*Id.* at 646 (cleaned up).

The Ninth Circuit held that this recitation did not state a claim in light of *Twombly* and *Iqbal*. *Id.* It noted "the Supreme Court's pronouncement in *Iqbal* that a [p]laintiff's pleading burden cannot be discharged by a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* at 644 (cleaned up). It held that "although plaintiffs in these types of cases cannot be expected to allege with mathematical precision the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646 (cleaned up). A complaint that "merely alleges that [a plaintiff] was not paid for overtime hours worked," without more, does not plead a plausible claim. *Id.*

*Twombly* and *Iqbal* apply to all civil claims in federal court, and thus federal courts apply the *Twombly*/*Iqbal* standard as delineated in *Landers* to minimum-wage, overtime, meal-break, and rest-period claims under the California Labor Code. Courts have held that a plaintiff must plead facts demonstrating at least one workweek when she was not paid minimum wage, worked in excess of forty hours and was not paid overtime, or was impeded from taking a meal break or rest period, to state a plausible claim. *See, e.g., Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001, at *10, *12 (N.D. Cal. Feb. 27, 2019) (applying *Landers* to California

1    Labor Code minimum-wage, overtime, meal-break, and rest-period claims); *Suarez v. Bank of Am.*

2    *Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *4–7 (N.D. Cal. May 30, 2018) (same).

3          Courts have held that general allegations that a plaintiff "regularly" worked without being

4    adequately compensated, without more facts, are conclusory and insufficient to state a claim. *See,*

5    *e.g.*, *Bush v. Vaco Tech. Servs.*, No. 17-cv-05605-BLF, 2018 WL 2047807, at *9 (N.D. Cal. May

6    2, 2018) (the plaintiff's "bare assertion that she 'regularly' worked more than the statutory

7    requirement is conclusory and insufficient under the standard set forth in *Landers*"). Similarly,

8    general allegations that the defendant "required" a plaintiff to work without being adequately

9    compensated, without more facts, are conclusory and insufficient to state a claim. *Id.* at *8

10   (allegations that the plaintiff "was required to report to [the defendant]'s headquarters" at certain

11   times "is another way of saying that [the plaintiff] and the putative class 'regularly' worked excess

12   hours, and does not amount to an allegation that [the plaintiff] *actually* worked" excess hours);

13   *McMillian v. Overton Sec. Servs.*, No. 17-cv-03354-JSC, 2017 WL 4150906, at *2 (N.D. Cal.

14   Sept. 19, 2017) (allegations that plaintiff "was required to work in excess of 40 hours per week"

15   do not state a plausible claim).

16       **2.2 Application**

17        Here, as shown by the account in the Statement, the complaint's allegations amount only to a

18   conclusion that the defendants required the plaintiff to routinely and regularly work overtime

19   without compensation and denied her breaks. Other than explaining her general workweek (more

20   than eight hours a day or forty hours in a week), she gives no example of any week where she was

21   not paid minimum wage or worked in excess of forty hours a week and was not paid overtime.

22   The allegation about contacting her when she was not at work is conclusory and does not allow an

23   inference that the plaintiff worked overtime. *Velasco v. Elliot*, No. 18-cv-03191-VKD, 2018 WL

24   6069009, at *5 (N.D. Cal. Nov. 20, 2018). She also must plead any facts about the employer's

25   knowledge of the off-the-clock work, which presumably she can if the employer is contacting her

26   after hours about work. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000); *White v.*

27   *Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083–85 (N.D. Cal. 2007).

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In sum, the allegations are too conclusory to plausibly plead claims. *See Bush*, 2018 WL 2047807, at *9. The court dismisses claims one through four with leave to amend. Because claims five and six are predicated on these claims, the court dismisses them too.

## CONCLUSION

The court grants the motion to dismiss claims one through six with leave to amend. The plaintiff must file any amended complaint within four weeks and attach a blackline compare of the amended complaint to the current complaint.

This resolves ECF No. 5.

**IT IS SO ORDERED.**

Dated: August 16, 2023

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California